AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
Southern District of California

| In the Matter of the Search of | | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) ) | Case No.     '19 MJ 44 24 |
| Apple Phone<br>Model No. iPhone XS<br>IMEI 357210095478446 | | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3.

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

FILED

OCT 0 9 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC 952, 960; 21 USC 952, 960, 963; 21 USC 841(a)(1); 21 USC 846 | Importation of a Controlled Substance; Conspiracy to Import a Controlled Substance; Possession of a Controlled Substance with Intent to Distribute; Conspiracy to Possess a Controlled Substance with Intent to Distribute |

The application is based on these facts:

See attached affidavit of Allie M.C. Peters, HSI Special Agent

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Allie M.C. Peters, HSI Special Agent
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

_____
*Judge's signature*

City and state:  San Diego, California

Hon. Linda Lopez, U.S. Magistrate Judge
_____
*Printed name and title*

1

## AFFIDAVIT

2    I, Special Agent Allie M.C. Peters, being duly sworn, hereby state as follows:

3    ## INTRODUCTION

4    1.    I submit this affidavit in support of an application for a warrant to search the

5    following cellular phones:

6

7    LG Phone
     Model No. L90 D405N
8    IMEI 014209-00-472513-2
9    (**Target Device 1**)

10

11   Samsung Phone
     Model No. G935F Galaxy S7 Edge
     IMEI 352329081218692
12   (**Target Device 2**)

13

14   Apple Phone
     Model No. iPhone XS
15   IMEI 357210095478446
     (**Target Device 3**)
16

17   collectively referred to herein as the "**Target Devices**," as further described in Attachments

18   A-1 through A-3, and to seize evidence of crimes, specifically violations of Importation of

19   a Controlled Substance, in violation of 21 U.S.C. § 952, 960, Conspiracy to Import a

20   Controlled Substance, in violation of 21 U.S.C. §§ 952, 960, and 963, Possession of a

21   Controlled Substance with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1) and

22   Conspiracy to Possess a Controlled Substance with Intent to Distribute, in violation of 21

23   U.S.C. § 846, as further described in Attachment B.

24   2.    The requested warrant relates to the investigation and prosecution of Oscar

25   MOTOLINIA Islas ("MOTOLINIA") for importing approximately 39.52 kilograms of

26   cocaine from Mexico into the United States. *See U.S. v. Motolinia-Islas*, Case No. 19-mj-

27   3669 (S.D. Cal.) at ECF No. 1 (Complaint). The **Target Devices** currently are in the San

28   Diego Evidence Vault located at 880 Front Street, San Diego, California 92101.

1

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

4. I have been employed as a Special Agent with Homeland Security Investigations since August 2018. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia. Prior to becoming a Special Agent, I served as a United States Customs and Border Protection Officer with the United States Customs and Border Protection ("CBP"), from 2015-2018.

5. During my tenure with HSI, I have participated in the investigation of various drug trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.

6. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because cellular telephones are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber

2

Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

8.    This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.    tending to indicate efforts to import cocaine, or some other federally controlled substance, from Mexico into the United States, or distribute cocaine or some other controlled substance within the United State;

b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other federally controlled substance, from Mexico into the United States, or the possession with the intent to distribute cocaine or some other controlled substance within the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other federally controlled substance, from Mexico into the United States, or the possession with the intent to distribute cocaine or some other controlled substance within the United States;

d.    tending to identify travel to or presence at locations involved in the importation of cocaine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points, or the possession with the intent to distribute cocaine or some other controlled substance within the United States;

3

1
2

    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

3
4
5

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

6

## FACTS SUPPORTING PROBABLE CAUSE

7
8
9
10
11

    9.    At approximately 1:25 a.m. on August 29, 2019, while conducting a pre-primary canine screening at the San Ysidro Port of Entry (POE) in vehicle lane number thirteen (13), Canine Enforcement Officer Arcia's canine alerted to the truck bed of a Chevrolet Silverado, bearing a California License Plate. CBP Officer Arcia advised CBP Officer Jimenez and CBP Officer LaBranche of the alert.

12
13
14
15
16

    10.    MOTOLINIA was identified as the sole occupant of the Chevrolet Silverado. At approximately 1:27 a.m. Officer Jimenez conducted an inspection of MOTOLINIA and the Chevrolet Silverado. MOTOLINIA stated that he was going to San Diego. MOTOLINIA was asked if he had anything to declare. MOTOLINIA stated that he had nothing to declare.

17
18
19
20
21
22
23
24

    11.    CBP Officer LaBranche and CBP Officer Arcia then escorted the vehicle to secondary inspection. On the way to secondary inspection, CBP Officer LaBranche asked MOTOLINA where he was going. MOLOLINIA stated that he was going home in Chula Vista. CBP Officer LaBranche then screened the vehicle using the "Z-Portal" X-Ray Machine. Per the report, CBP Officer LaBranche noticed an anomaly, within a box, in the front of the truck bed. CBP Officer LaBranche told CBP Officer Arcia about the anomaly. After opening the box, CBP Officer LaBranche found black packages. CBP Officer LaBranche told the lot supervisor of his findings.

25
26
27
28

    12.    On further inspection of the vehicle in the secondary area, Officer Jones removed thirty (30) packages from the box. CBP Officer Morris received the packages and tested one of the packages using the Gemini system. The package tested positive for cocaine. The remaining packages were not tested due to having the same likeness and

1 consistency as the package that was tested.

2      13.    In total, CBP Officer Jones recovered thirty (30) packages of cocaine, with

3 an approximately weight of 39.52 kilograms. Officer Jones also seized the cocaine,

4 Chevrolet Silverado, the **Target Devices**, and $867, as well as personal effects, from

5 MOTOLINIA. Officer Jones also placed MOTOLINIA under arrest for the importation

6 of controlled substances.

7      14.    According to law enforcement records, MOTOLINIA became the registered

8 owner of the Chevrolet Silverado on or about August 31, 2019, after the date of his arrest.

9 Per crossing records, MOTOLINIA crossed in the Chevrolet Silverado from Mexico into

10 the United States via ports of entry in the San Diego area approximately 267 times between

11 June 8, 2018 and August 29, 2019.

12      15.    In light of the above facts, MOTOLINIA's statements, and my own

13 experience and training, there is probable cause to believe that MOTOLINIA was using

14 the **Target Device**s to communicate with others to further the importation of illicit

15 narcotics into the United States based on the common use of cellular telephones to facilitate

16 drug trafficking.

17      16.    In my training and experience, narcotics traffickers may be involved in the

18 planning and coordination of a drug smuggling event in the days and weeks prior to an

19 event. Co-conspirators are also often unaware of a MOTOLINIA's arrest and will continue

20 to attempt to communicate with a defendant after their arrest to determine the whereabouts

21 of the narcotics. Based on my training and experience, it is also not unusual for individuals,

22 such as MOTOLINIA, to attempt to minimize the amount of time they were involved in

23 their smuggling activities, and for the individuals to be involved for weeks and months

24 longer than they claim. Accordingly, I request permission to search the **Target Devices** for

25 data beginning on June 8, 2018 through August 31, 2019, which was approximately when

26 MOTOLINIA started crossing in the Chevrolet Silverado through August 31, 2019 (the

27 date of his registration of the Chevrolet Silverado).

28

1

## METHODOLOGY

2    17.    It is not possible to determine, merely by knowing the cellular telephone's
3    make, model and serial number, the nature and types of services to which the device is
4    subscribed and the nature of the data stored on the device. Cellular devices today can be
5    simple cellular telephones and text message devices, can include cameras, can serve as
6    personal digital assistants and have functions such as calendars and full address books and
7    can be mini-computers allowing for electronic mail services, web services and rudimentary
8    word processing. An increasing number of cellular service providers now allow for their
9    subscribers to access their device over the internet and remotely destroy all of the data
10   contained on the device. For that reason, the device may only be powered in a secure
11   environment or, if possible, started in "flight mode" which disables access to the network.
12   Unlike typical computers, many cellular telephones do not have hard drives or hard drive
13   equivalents and store information in volatile memory within the device or in memory cards
14   inserted into the device. Current technology provides some solutions for acquiring some of
15   the data stored in some cellular telephone models using forensic hardware and software.
16   Even if some of the stored information on the device may be acquired forensically, not all
17   of the data subject to seizure may be so acquired. For devices that are not subject to forensic
18   data acquisition or that have potentially relevant data stored that is not subject to such
19   acquisition, the examiner must inspect the device manually and record the process and the
20   results using digital photography. This process is time and labor intensive and may take
21   weeks or longer.

22   18.    Following the issuance of this warrant, I will collect the subject cellular
23   telephone and subject it to analysis. All forensic analysis of the data contained within the
24   telephone and its memory cards will employ search protocols directed exclusively to the
25   identification and extraction of data within the scope of this warrant.

26   19.    Based on the foregoing, identifying and extracting data subject to seizure
27   pursuant to this warrant may require a range of data analysis techniques, including manual
28   review, and, consequently, may take weeks or months. The personnel conducting the

6

identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

### CONCLUSION

21. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of MOTOLINIA's violations of Importation of a Controlled Substance, in violation of 21 U.S.C. § 952, 960, Conspiracy to Import a Controlled Substance, in violation of 21 U.S.C. §§ 952, 960, and 963, Possession of a Controlled Substance with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1) and Conspiracy to Possess a Controlled Substance with Intent to Distribute, in violation of 21 U.S.C. § 846.

22. Because the **Target Devices** were seized at the time of MOTOLINIA's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from June 8, 2018 through August 31, 2019.

23. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item(s) described in Attachments A-1 through A-3 and seize the items listed in Attachment B using the above-described methodology.

1    I swear the foregoing is true and correct to the best of my knowledge and belief.

2

3                                                    _____
                                                     ALLIE M.C. PETERS
4                                                    Special Agent
                                                     Homeland Security Investigations
5

6    Subscribed and sworn to before me this _____ day of October, 2019.

7

8                              _____

9    Hon. Linda Lopez
     United States Magistrate Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                             8

## ATTACHMENT A-3

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Apple Phone
> Model No. iPhone XS
> IMEI 357210095478446
> **(Target Device 3)**

The Target Device is currently in the possession of the Department of Homeland security at the San Diego Evidence Vault located at 880 Front Street, San Diego, California 92101. Homeland Security Investigations

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 8, 2018 through August 31, 2019.

a. tending to indicate efforts to import cocaine, or some other federally controlled substance, from Mexico into the United States, or distribute cocaine or some other controlled substance within the United State;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other federally controlled substance, from Mexico into the United States, or the possession with the intent to distribute cocaine or some other controlled substance within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other federally controlled substance, from Mexico into the United States, or the possession with the intent to distribute cocaine or some other controlled substance within the United States;

d. tending to identify travel to or presence at locations involved in the importation of cocaine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points, or the possession with the intent to distribute cocaine or some other controlled substance within the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

      f.       tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Importation of a Controlled Substance, in violation of 21 U.S.C. § 952, 960, Conspiracy to Import a Controlled Substance, in violation of 21 U.S.C. §§ 952, 960, and 963, Possession of a Controlled Substance with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1) and Conspiracy to Possess a Controlled Substance with Intent to Distribute, in violation of 21 U.S.C. § 846.